### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

STEPHEN SWAYNE o/b/o
A.M.C.S.,

    PLAINTIFF,

VS.                                               CASE NO.: CV-12-J-2815-S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    DEFENDANT.

### MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff, the parent of A.M.C.S. ("the minor") is seeking Supplemental Security Income (SSI) based on the minor's diagnosis of sickle cell disease, pulmonary hypertension, leak in aortic valve, acid reflux, chronic migraines, back pain and asthma (R. 113). On appeal, the plaintiff argues that the Administrative Law Judge ("ALJ") failed to apply the medical equivalence standard based on the totality of the evidence with the assistance of a medical expert. See plaintiff's memorandum (doc. 10), at 5.

The plaintiff filed an application for SSI on behalf of his minor child on February 20, 2009 (protective filing date), when the minor was 13 years old (R. 124). That application was denied and a hearing in front of an administrative law judge (ALJ) was subsequently held on July 20, 2010 (R. 44-78, 79-84). The ALJ thereafter

rendered an opinion finding that the plaintiff was not under a disability at any time through the date of his decision (R. 19-37).

The plaintiff requested administrative review of the ALJ's decision by the Appeals Council, which denied the request for review on June 28, 2012 (R. 1-3). The ALJ's decision thus became the final order of the Commissioner of Social Security. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1).

The court has considered the record and the arguments of the plaintiff. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

## Factual Background

The minor was born July 15, 1995, and at the time of the hearing, would be starting the ninth grade in the fall (R. 49, 109). She testified that her main symptom due to sickle cell disease was pain in her back or her joints tightening, but this only caused her to miss school infrequently in the past year (R. 51-52). She also suffers from migraine headaches, but has never missed school because of one (R. 53). She did not participate in any extra activities at school, and was limited in her ability to participate in physical education because she easily tires (R. 54). She has asthma, but has never gone to the hospital for an asthma attack, and controls it with medication and a breathing machine at home (R. 55). The minor performed household chores such as cleaning her room and the kitchen, could prepare food for herself, helped with

grocery shopping, and was looking forward to learning to drive (R. 56-57). She had no trouble taking care of her personal grooming and hygiene, and spent the time she was not in school playing with friends or playing video games (R. 58-60). Although she takes numerous medications, she does not have side effects from them (R. 61).

The minor has had previous problems in school with fighting and received in school suspension (R. 63). A Social Security Questionnaire completed by one of the minor's teachers noted that there was "not an unusual degree of absenteeism" (R. 145). That teacher further noted no problems in acquiring and using information, attending and completing tasks, or moving about and manipulating objects (R. 146-149). The questionnaire does reflect that the minor had serious problems with expressing anger appropriately, respecting and obeying adults, and using appropriate language (R. 148, 151). Lastly, that teacher stated that the minor "frequently" missed school due to illness (R. 150).

From a prior year, a Notice and Eligibility Decision form for Special Education Services reflects that the minor was being considered for services because of her medical diagnosis of sickle cell anemia and other ailments which caused the minor to miss almost 18% of school days for which she was not making up all the work, and in turn contributing to low grades (R. 164, 166). However, the minor's year end report card for her 8th grade year showed only 4 absences for the year, and that the minor achieved A's and B's in all her classes (R. 170).

Plaintiff, the minor's father, stated the minor's in school problems stemmed from kids teasing her because of symptoms of her disease such as jaundice (R. 66). He testified that at the time of the hearing, the minor's condition was on an improvement curve, with periodic drops, but the medication hydroxyurea[1] was helping (R. 66-67, 75).  The minor's last hospitalization was in June 2009 due to a severe pain crisis (R. 70-71) in addition to emergency room visits for fluids and morphine to control pain (R. 72).  However, he also stated that the minor was missing fewer days of school than in the past, and probably has only missed one or two in the past year (R. 74).

The plaintiff also stated that the minor had a high pain tolerance, but he could tell when her pain was bad because the minor would be "dragging" (R. 67).  He also stated that she has a lot of sore throats (R. 67), but that her migraine headaches had

---

[1]Hydroxyurea was developed as a treatment for cancer. http://www.stjude.org/SJFile/ Hydroxyurea%20Treatment%20for%20SCD2.pdf. Because it stimulates production of fetal hemoglobin, it reduces the severity of sickle cell disease, causing the blood cells to retain their round shape instead of becoming sickle shaped, rigid and sticky.  Thus, hydroxyurea reduces the frequency of acute pain crises and episodes of acute chest syndrome which are manifestations of sickle cell disease.

Hydroxyurea is currently the only drug in general use to prevent acute sickle cell crises. Hydroxyurea is recommended as frontline therapy to treat adults and adolescents with moderate-to-severe recurrent pain (occurring three or more times a year). It is taken daily by mouth. Hydroxyurea can be taken indefinitely and the benefits appear to be long-lasting. Hydroxyurea is not a cure-all. Not all patients respond to hydroxyurea, and the best candidates for the treatment are not yet clear. http://www.umm.edu/patiented/articles/what_treatments _aimed_at_sickle-cell_disease_itself_000058_7.htm#ixzz2NWkPSQxu

improved with medication[2] (R. 69-70).  Additionally, the plaintiff testified his child did not get along well with children her own age, instead favoring children much younger than herself (R. 67-68).

The medical evidence in the record at the time of the hearing is thoroughly reflective of the testimony of the minor and the plaintiff.  These records show, as a whole, that the minor has been hospitalized because of a pain crisis, which is a symptom of sickle cell disease, but these hospitalizations are few.  She was admitted for pain treatment in September 2007 (R. 245). She was treated with IV fluids and pain medications until her pain resolved (R. 245-247).  A pediatric cardiologist opined that the minor's shortness of breath was non-cardiac and did not see significant evidence of pulmonary hypertension (R. 188).

The minor was referred for a pediatric neurosurgery consult in January 2008 due to her headaches (R. 242).  A MRI reflected a "relatively unimpressive Chiari malformation"[3] (R. 242).  The headaches were noted to have no characteristics of the type of headaches due to Chiari malformations, and the recommendation was to have the minor followed by a neurologist (R. 242-243).

---

[2]The minor is prescribed amitriotylin for migraines (R. 118).

[3]Chiari malformations (CMs) are structural defects in the cerebellum, the part of the brain that controls balance.  Normally the cerebellum and parts of the brain stem sit in an indented space at the lower rear of the skull, above the foramen magnum (a funnel-like opening to the spinal canal).  When part of the cerebellum is located below the foramen magnum, it is called a Chiari malformation.  http://www.ninds.nih.gov/disorders/chiari/detail_chiari.htm#227523087.

In March 2009 the minor reported having to go to the emergency room for sickle cell pain, but had been doing relatively well (R. 192). She was seen again in April 2009, for breathing problems and a sore throat (R. 347, 349). She was diagnosed with and treated for strep throat, and discharged home (R. 352). The minor was then admitted to the hospital due to pain and fever in July 2009 (R. 317). Those records note that she had "pain in her elbows, knees and back since this morning. She is taking Motrin and Lortab at home without relief. The pain is typical for her crises" (R. 317). She was given IV fluids and morphine to treat the pain, which eased enough to switch to Motrin and Lortab after "a few days" (R. 318, 327). In November 2009 the minor was seen in the emergency room due to pain which she could not relieve with narcotic medications at home (R. 296, 299). She was given morphine and other medications until her pain resolved, and she was discharged home (R. 298-301).

A June 2010 visit to a pediatric pulmonologist reflects that the minor was doing much better since having started hydroxyurea and had little breakthrough wheezing except for exercise induced symptoms (R. 265). That doctor opined that the minor had "sickle cell disease with asthma and mild restrictive lung disease, quite stable" which was "improved on Hydroxyurea therapy" (R. 265). Office visits to her regular treating physician in 2010 also found that she was doing "very well" (R. 269). Several days of pain were noted, but did not require emergency room visits (R. 269,

280). In April 2010 an MRI due to knee pain found no abnormality other than changes due to sickle cell disease (R. 261). In June she had run out of her headache medicine, causing an increase in headaches, but her energy was normal and her knee pain was resolved (R. 269).

## Standard of Review

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir.1987). This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th

Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993).

The test to be applied for whether a child may be considered disabled is as follows:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). In determining the severity of all impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments. 42 U.S.C. § 1382c(a)(3)(G).

The regulations further set forth steps to be used to determine disability for children. 20 C.F.R. §416.924.

> If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals the listings. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a). Age, functioning, and other factors are evaluated in determining whether a child meets a listing. 20 C.F.R. § 416.924a-416.924b. A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. *Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1279 (11th Cir.2004); *citing* 20 C.F.R. § 416.926(a)(2).

If a child's impairments do not meet a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairments to determine whether the functional limitations are "functionally equivalent" to those in the Listings. *Shinn*, 391 F.3d at 1279. *See also* 20 C.F.R. §416.926a.

The regulations define the term "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.902. In making this determination, the ALJ must assess the degree to which the child's limitations interfere with the child's normal life activities in six specific domains:

> (1) acquiring and using new information
> (2) attending and completing tasks
> (3) interacting and relating to others
> (4) moving about and manipulating objects
> (5) caring for oneself
> (6) health and physical well-being.

20 CFR § 416.926a(b)(1).  An impairment "functionally equals the Listings if, as a result of the limitations stemming from that impairment the child has "marked limitations" in two of the domains or an "extreme limitation" in one domain.  *Shinn*, 391 F.3d at 1279, citing 20 C.F.R. § 416.926a(d); § 416.925(a).  There is also a duration requirement that the impairment has lasted or can be expected to last for a continuous period of not less than 12 months.  20 C.F.R. § 416.906.

## Legal Analysis

The court finds the conclusions of the ALJ are well supported by the evidence of record, which reflects that while the minor suffers from severe impairments, those impairments are not of sufficient severity to meet or equal any listings and do not cause more than minimal limitations in any of the domains the court must examine.  Although the plaintiff faults the ALJ for examining the minor's impairments under separate listings, the ALJ did consider all of these impairments in combination when evaluating the minor's limitations in regard to the six functional equivalence domains.  See plaintiff's memorandum, at 5.  The plaintiff also faults the ALJ for not considering the minor's history of Chiari-1 malformation in regard to her headaches.  Plaintiff's memorandum at 6.  However the medical records, detailed above, specifically exclude the Chairi malformation as the cause of the minor's headaches,

stating that the headaches were noted to have no characteristics of the type of headaches due to Chiari malformations (R. 242-243).

The plaintiff further faults the ALJ for considering only functional equivalence, rather than medical equivalence.[4]  Plaintiff's memorandum at 6.  However, the plaintiff points to no specific Listing which the minor equals, and offers no suggestion as to how an updated medical expert opinion would have assisted the ALJ. *Id*.  Rather, the plaintiff states only that

> The ALJ erred in failing to obtain the services of a medical expert in order to address the combined effect of [the minor]'s conditions with respect to the Listing and to the functional domains.  The ALJ could have obtained a neurological or pediatric examination to obtain a more contemporaneous understanding of the nature and extent of the combined limitations.

Plaintiff's memorandum, at 7.

The ALJ could have done many things to further develop the evidence. Lacking from this argument is any evidence, let alone even a suggestion, as to what such further development of the record would have accomplished or that such further evidence would have changed the outcome of the hearing.  The substantial evidence of record clearly supports the analysis of the ALJ.

## Conclusion

---

[4]Nowhere does the plaintiff argue that the minor meets or equals the Listing specific to sickle cell disease.  *See* 20 C.F.R. Pt. 404, Subpart P, App.1, Listing 107.05.

11

Based upon a consideration of all of the evidence and the memorandum of law of the plaintiff, this court finds that the decision of the ALJ is well-supported by the evidence of record. Therefore, the court **AFFIRMS** the determination of the ALJ.

**DONE** and **ORDERED** the 25th day of March, 2013.

_____
INGE PRYTZ JOHNSON
SENIOR   U.S.   DISTRICT   JUDGE